UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC.            08 MDL 1963
SECURITIES, DERIVATIVE, AND ERISA
LITIGATION                                    OPINION

This Document Relates To:

    Derivative Action, 07 Civ. 10453

------------------------------------------X

**Sweet, D.J.**

    Plaintiff Samuel T. Cohen ("Plaintiff") has moved for reconsideration of the Court's January 19, 2011 opinion (the "Opinion"), which dismissed Plaintiff's Verified Third Amended Shareholder Derivative and Class Complaint ("TAC"). Plaintiff's motion for reconsideration was filed on February 9, 2011, and it was considered fully submitted on April 6, 2011.

    For the following reasons, Plaintiff's motion for reconsideration is denied.

**Applicable Standard**

    Plaintiff requests reconsideration of the Opinion under Federal Rule of Civil Procedure 59(e) and Local Civil Rule

6.3. The standards governing motions under both Rule 59(e) and Local Civil Rule 6.3 are the same, and a court may grant reconsideration where the party moving for reconsideration demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (quotation marks and citations omitted); Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.") (citing Virgin Atl. Airways, Ltd. v. National Mediation Bd., 965 F.2d 1245, 1255 (2d Cir. 1992)); Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701-02 (S.D.N.Y. 2001) (granting reconsideration due to the court's erroneous application of a statute). The moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. See Linden v. District Council 1707-AFSCME, 415 Fed. Appx. 337, 338-39 (2d Cir. 2011) (affirming dismissal of reconsideration motion as movant did not identify any relevant facts or controlling authority that the lower court

overlooked); Lichtenberg v. Besicorp Group Inc., 28 Fed. Appx. 73, 75 (2d Cir. 2002) (affirming dismissal of reconsideration motion where movant "failed to demonstrate that the [lower] court overlooked any fact of consequence or controlling legal authority at the time the court decided [the case]").

The reason for the rule confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Polsby v. St. Martin's Press, Inc., No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation and quotation marks omitted). A court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig., No. 08 M.D.L. 1963, 2009 WL 2168767, at *1 (S.D.N.Y. Jul. 16, 2009) ("A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.") (quoting Davey v. Dolan, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007)); ResQNet.com, Inc. v. Lansa, Inc., No.

01 Civ. 3578, 2008 WL 4376367, at *2 (S.D.N.Y. Sept. 25, 2008) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (citations and quotation marks omitted); Ballard v. Parkstone Energy, LLC, No. 06 Civ. 13099, 2008 WL 4298572, at *1 (S.D.N.Y. Sept. 19, 2008) ("Local Rule 6.3 is to be narrowly construed and strictly applied in order to avoid repetitive arguments on issues that the court has fully considered.") (quoting Abrahamson v. Board of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002)).

Motions for reconsideration "are not vehicles for taking a second bite at the apple,… and [the court] [should] not consider facts not in the record to be facts that the court overlooked." Rafter v. Liddle, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (citation and quotation marks omitted).

**Plaintiff Has Failed to Establish That He Fits within the Fraud Exception to the Continuous Ownership Rule**

Plaintiff contends that the Delaware Supreme Court's opinion in Arkansas Teacher Retirement System v. Caiafa, 996 A.2d 321 (Del. 2010), expanded the fraud exception to the continuous ownership rule such that Plaintiff fits within the exception and should be allowed to maintain his derivative claims.[1]

The fraud exception to the continuous ownership rule was established in Lewis v. Anderson, 477 A.2d 1040 (Del. 1984), and provides that a shareholder may maintain his post-merger suit "if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive stockholders of the standing to bring a derivative action." Id. at 1049. This exception is narrow, and this Court found that Plaintiff has failed to sufficiently allege that the merger between the Bear Stearns Companies, Inc. ("Bear Stearns") and JPMorgan Chase & Co. ("JPMorgan") was undertaken merely to deprive shareholders of a derivative suit. Opinion at 262. This Court also noted that Plaintiff failed to "explain why the Federal Reserve would participate in a fraudulent sale." Id.

---

[1] Plaintiff seems to contend that Count VI of the TAC is a single derivative claim. However, the caption indicates that this claim is alleged against JPMorgan, rendering it a double derivative claim.

Arkansas Teacher does not expand the scope of the fraud exception. See In re Massey Energy Co., C.A. No. 5430-VCS, 2011 WL 2176479, at *30 n. 199 (Del. Ch. May 31, 2011). Rather, it represents an application of the fraud exception to specific, extreme factual circumstances. Id. Furthermore, the entire discussion upon which Plaintiff relies was dicta.

In Arkansas Teacher, the Delaware Supreme Court affirmed the lower court's approval of a settlement in which the Teacher Retirement System's ("TRS") derivative claims against Countrywide were given no value. 996 A.2d at 322. In dicta, the Court discussed the "wholly inappropriate" conduct of Countrywide's directors and the hypothetical possibility that the plaintiff's derivative claim would have fallen with the fraud exception. Id. at 322-24. While noting that the merger was not fraudulently conducted and the merger price was not fraudulently set, the Court found that "the allegations underlying TRS' request for relief suggest a potential relationship between the directors' alleged premerger fraudulent conduct and the rapidly and severely depressed stock price on which the merger consideration was based." Id. at 322. The Court went on to state that the fraud exception "generally applies where stockholder-plaintiffs allege that the board

6

inadequately priced or improperly conducted a corporate merger, but its terms apply more broadly to fraud connected to the merger." Id. at 323.

Looking at the allegations before it, the Court noted that the fraud perpetrated by Countrywide's directors destroyed the company's value and necessitated a corporate rescue and individual legal protection, both of which the directors obtained through merger. Id. Citing Braasch v. Goldschmidt, 199 A.2d 760, 764 (Del. Ch. 1964), the Court noted that "Delaware law recognizes a single, inseparable fraud when directors cover massive wrongdoing with an otherwise permissible merger." 996 A.2d at 323. The Court went on to find that, even though the merger was not executed primarily to escape derivative liability, the fraud at Countrywide forced the transaction and caused its low price. Id. The Court then noted that "[a]n otherwise pristine merger cannot absolve fiduciaries from accountability for fraudulent conduct that necessitated that merger." Id. (citing Braasch, 199 A.2d at 764). The Court further stated that "[w]hether this plausible scenario reflects this board's single, cohesive plan or merely ties together, like patchwork, a snowballing pattern of fraudulent conduct and conscious neglect, the result is the same and would not fairly

7

constitute a proper discharge of the fiduciary duties of directors of a Delaware corporation." Id.

The Court also noted that, had TRS prevailed on its derivative claims, it, and not Countrywide, would have been entitled to recovery from the Countrywide directors. Id. at 323-34.

Significantly, the Court in Arkansas Teacher presented the Anderson fraud exception as the controlling law and did not claim to expand upon it. Id. at 322-23. Rather, it found that, under the facts alleged, the merger was a piece, albeit a relatively clean one, of the larger fraud which destroyed Countrywide, bringing it within the fraud exception. Id. at 323.

In Massey, the Delaware Chancery Court thoroughly considered the impact of the Arkansas Teacher dicta. 2011 WL 2176479, at *30 n. 199. It rejected an argument similar to that offered by Plaintiff here, that Arkansas Teacher represented an expansion of the fraud exception to include instances where fraud has so harmed a company that it is forced into a merger, even if the merger itself was not fraudulent. Id. The Court in

Massey found the plaintiff's interpretation to be "strained" and held that Arkansas Teacher did not broaden the scope of the fraud exception. Id. In so holding, the court reviewed other recent Delaware Supreme Court precedent and the dicta of Arkansas Teacher itself. Id.

In Massey, the court held that Arkansas Teacher was an application of the Anderson fraud exception to a particular fact pattern. Id. The court found it significant that the merger in Arkansas Teacher was a necessity created by the fraud and "inseparable" from it. Id.[2] The court noted that Arkansas Teacher "seems to be saying… that a board may not immunize itself from liability by ruining a corporation's value, and then selling the wreckage to a third-party who is acting in good faith." Id. It went on to find that "[t]he Supreme Court appears to have perceived that there was a factual basis for the fraud exception in Lewis to apply but that the objector had failed to invoke that exception in a fair and timely manner." Id.

---

[2] In Massey, the court found that the merger before it was not a necessity, as the company had alternative plans to address its crisis. Id. Furthermore, the company sold its stock at a premium, not a discount. Id. The court in Massey thus distinguished the facts before it from those before Arkansas Teacher.

9

By its own terms and subsequent evaluation here and in Massey, the dicta in Arkansas Teacher does not represent a change in the law governing Plaintiff's derivative claim, but the application of a standard which has existed for decades and which this court applied in dismissing Plaintiff's derivative claim. Rule 59(e) and Local Rule 6.3 are to be narrowly construed, and while the hypothetical fact pattern in Arkansas Teacher bears similarities to the facts before this Court, those similarities do not merit the grant of Plaintiff's motion for reconsideration on this issue.

**Plaintiff Has Failed to Establish Harm to JPMorgan and Demand Futility with Regard to JPMorgan's Board**

Plaintiff contends that the Court erred in requiring him to demonstrate that JPMorgan suffered the same harm as Bear Stearns in order to proceed with his double derivative claim. However, Plaintiff has misread the Opinion, which found that Plaintiff had failed to allege any harm to JPMorgan whatsoever. Opinion at 267. In fact, Plaintiff alleged that JPMorgan benefitted from the underlying fraud. Id. at 267-68.

Plaintiff contends that the Court misapplied Lambrecht v. O'Neal, 3 A.3d 277 (Del. 2010), but fails to establish that

10

this is so.  In Lambrecht, the Delaware Supreme Court considered whether shareholders of Merrill Lynch could maintain a double derivative claim against Merrill Lynch's Board of Directors after Bank of America acquired Merrill Lynch in a merger.  Id. at 280-81.  The Court held that Merrill Lynch's potential derivative claim against its Board became the property of Bank of America through the merger.  Id. at 288-89.  The double derivative claim that could be brought, therefore, was based on the failure of Bank of America's board to prosecute Merrill Lynch's pre-merger claim.  Id. at 289.

Lambrecht stands for the proposition that JPMorgan acquired any potential claim that Bear Stearns had against its officers and directors when the two companies merged.  This Court recognized that the claim against the Bear Stearns Board of Directors passed to JPMorgan following the merger.  This Court also recognized, however, that if JPMorgan benefited from the conduct of which Plaintiff complains, it may not be in the JPMorgan's best interests to pursue such a claim against Bear Stearns' officers and directors.  Opinion at 278.  Ultimately, it is JPMorgan's decision whether to pursue such claims.  See, e.g., Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990) (citing Zapata Corp. v. Maldonado, 430 A.2d 779, 782 (Del. 1981); 8

11

Del.C. § 141(a)); Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). In the Opinion, the Court expressed its concern that conferring double derivative standing in these circumstances, where alleged harm to a subsidiary allegedly benefited the parent, "would expose boards to excessive interference and go beyond the limits of derivative litigation." Opinion at 269.

Plaintiff also contends that he has established the futility of demanding that JPMorgan's Board pursue the company's claims against Bear Stearns' officers and directors at the time the TAC was filed. Specifically, Plaintiff argues that the JPMorgan Board was complicit in and ratified the wrongdoing at Bear Stearns and that pursuing a double derivative claim would amount to an admission that JPMorgan underpaid for Bear Stearns.

In the Opinion, this Court held that the demand was not futile as to the JPMorgan Board. Opinion at 270-280. Under Delaware law, a plaintiff purporting to bring a double derivative suit must make a pre-suit demand to enforce the corporation's claim upon, or plead demand futility as to, the board of the parent corporation. See Lambrecht, 3 A.3d at 290

(noting that a double derivative suit can only go forward "where the parent company board is shown to be incapable of deciding impartially whether or not to enforce the claim that the parent company now (indirectly) owns"); Hamilton Partners, L.P. v. Englard, 11 A.3d 1180, 1207 (Del. Ch. 2010) ("[T]he Lambrecht Court repeatedly observed that in a double derivative action involving a wholly owned subsidiary, a stockholder plaintiff only must plead demand futility (or otherwise satisfy Rule 23.1) at the parent level.") (citing Lambrecht, 3 A.3d at 282, 286 n. 31, 289 n. 40, 290).

Plaintiff must plead demand futility with particularity. Opinion at 272 (citing Fed. R. Civ. P. 23.1(b)(3); Del. Ch. Ct. R. 23.1(a); Stone ex rel. AmSouth Bancorp. v. Ritter, 911 A.2d 362, 367 & n.9 (Del. 2006) (noting that "[a]llegations of demand futility under Rule 23.1 'must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a)'") (citation omitted); Brehm, 746 A.2d at 254). This pleading requirement is more stringent than that demanded by Rule 12(b)(6). Id. at 273 (citing McPadden v. Sidhu, 964 A.2d 1262, 1269 (Del. Ch. 2008)). Plaintiff may not rely on conclusory allegations, but "must

13

provide particularized allegations raising a reasonable doubt as to whether (1) a majority of the directors are disinterested and independent, or (2) where a specific decision of the Board is challenged, the decision was the product of a valid exercise of business judgment." Id. at 272-73 (citations omitted). General allegations that directors lack disinterestedness or independence are not enough; rather, Plaintiff must plead facts that a majority of the JPMorgan Board is either interested or "so 'beholden' to an interested director… that his or her 'discretion would be sterilized.'" Beam v. Stewart, 845 A.2d 1040, 1050 (Del. 2004) (quoting Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993)). Plaintiff fails to meet this standard.

With regard to Plaintiff's first argument, that the JPMorgan Board was complicit in Bear Stearns' fraud by virtue of buying the company, Plaintiff appears to be impermissibly "plugging the gaps" in his case through this motion for reconsideration. Polsby, 2000 WL 98057, at *1. Plaintiff did not raise these allegations before. See Opinion at 279 (noting "Derivative Plaintiff does not allege that the JPMorgan Board members are subject to personal liability in this action, that they are beholden to interested parties, or that their independence and disinterest are otherwise doubtful").

14

Even if the Court considers Plaintiff's argument that JPMorgan's Board was complicit in Bear Stearns' alleged fraud, Plaintiff does not sufficiently allege in the TAC that JPMorgan's Board engaged in any wrongdoing. In his moving papers, Plaintiff points to one conclusory allegation of JPMorgan's potential wrongdoing in the TAC. Pl. Mem. in Supp. at 22 (citing TAC ¶ 179). Furthermore, the validity of the merger, and JPMorgan's conduct, has been litigated and upheld by a New York state court in a consolidated action that was brought shortly after the merger was announced in March 2008 and alleged substantially similar derivative claims to those alleged by Plaintiff here. See In re Bear Stearns Litig., 870 N.Y.S.2d 709, 739 (N.Y. Sup. Ct. 2008). The merger was also executed with the blessing of the Federal Reserve, a point which Plaintiff has not explained away.

Plaintiff's argument that if JPMorgan brought suit, it would be admitting to having underpaid for Bear Stearns, has already been rejected by this Court. Opinion at 278. Plaintiff points to no change in controlling law or overlooked facts which would justify reconsideration of this holding. Even so, to plead demand futility based upon potential liability, Plaintiff

15

must plead particularized facts showing that the JPMorgan Board engaged in "egregious" misconduct, evidencing bad faith on the part of a majority of the directors such that a "substantial likelihood of director liability exists." Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995) (holding that demand may be excused based on allegations of wrongdoing only in "rare" cases where the above criteria are met) (citing Aronson, 473 A.2d at 815). Plaintiff has not sufficiently alleged that the JPMorgan Board acted in bad faith or explained how JPMorgan's Board would be liable for allegedly underpaying in an arms-length merger transaction. Further undermining Plaintiff's argument, as noted above, are the facts that the validity of the merger has been upheld after being litigated in state court and the merger was executed in coordination with the federal reserve.

Plaintiff has failed to meet the stringent standards of Rule 59(e) and Local Rule 6.3, and his motion for reconsideration of the dismissal of his double derivative claims is denied.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion for reconsideration is denied.

It is so ordered.

New York, NY
September 6, 2011

_____
ROBERT W. SWEET
U.S.D.J.